## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Albert E. Branson, Jr.**

        **Plaintiff,**

**v.**                            **Case No. 13-CV-2582-JWL**

**Valu Merchandisers Company and**
**Associated Wholesale Grocers, Inc.,**

        **Defendants.**

### MEMORANDUM & ORDER

Plaintiff Albert E. Branson, Jr. filed this lawsuit against defendants asserting violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. This matter is presently before the court on defendants' motion for summary judgment on all claims (doc. 47).[1] As explained below, the motion is granted in part and denied in part.

### I.    Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff as the nonmoving party. Defendant Valu Merchandisers Company ("VMC") is a wholly-owned subsidiary of defendant Associated Wholesale Grocers, Inc. ("AWG"). VMC supplies health and beauty care products, general merchandise and specialty food products to nearly three thousand stores worldwide. AWG is a supplier of traditional grocery products such a fresh meat and produce, dry and canned food goods, dairy products, frozen foods and bakery goods.

---

[1] In the pretrial order, plaintiff also asserted claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq. Plaintiff has expressly abandoned those claims in response to defendants' motion for summary judgment.

Since 1972, AWG has maintained its headquarters at 5000 Kansas Avenue in Kansas City, Kansas. Beginning in 1994, shortly after its incorporation, VMC maintained its headquarters on Westport Road in Kansas City, Missouri. In 2011, defendants decided to relocate VMC's headquarters to AWG's facility in Kansas City, Kansas. The Westport facility was sold and vacated in August 2011. At that time, VMC moved to temporary headquarters in the Corporate Woods office complex in Overland Park, Kansas during construction of its new space in AWG's headquarters. In November 2012, VMC moved into its present headquarters at AWG's Kansas Avenue facility.

Plaintiff Albert E. Branson, Jr. began working for AWG in 1993 as a retail clerk cashier. In 1998, plaintiff transferred to VMC to work as a clerk in the mail room. In 2002, plaintiff was promoted to the position of Facilities Coordinator. In that role, plaintiff was supervised by Alex Valverde who, in turn, reported to Kenneth Nemeth, VMC's president and CEO. As VMC's facilities coordinator, plaintiff was responsible for all repairs and maintenance issues at VMC's Westport facility. Plaintiff's duties also included mail sorting and distribution; stocking the break room; photographing new product; setting up cubicles; and assisting with trade shows. When VMC moved to its temporary headquarters in Corporate Woods, plaintiff's duties changed somewhat because Corporate Woods provided facilities management such that plaintiff, for example, was no longer required to address HVAC or plumbing issues. Nonetheless, defendants found plaintiff enough additional tasks to keep him busy for 40 hours each work week and he was retained as VMC's facilities coordinator throughout the time that VMC was headquartered in Corporate Woods.

In February 2012, Mr. Nemeth advised plaintiff that the VMC Facilities Coordinator position, in all likelihood, would be eliminated once VMC moved to AWG's headquarters because AWG already had employees working in facilities management.   There is some testimonial inconsistency about who made the decision that plaintiff's position would be eliminated in VMC's move to 5000 Kansas Avenue, but it appears that Mr. Nemeth determined that there was no position available for plaintiff on the VMC side and that Jerry Garland, AWG's president and Mike Rand, AWG's Chief Operating Officer, determined that plaintiff was not needed as a Facilities Coordinator at the AWG facility.  Plaintiff realized that AWG had someone else employed in the Facilities Coordinator position at the AWG facility, but he was hopeful that he would secure another job with VMC or AWG before the move to the AWG facility.  In March 2012, plaintiff formally sought a Shelf Management Analyst position with AWG but he was not selected for that position.  In April 2012, when plaintiff realized that his position was the only position scheduled for elimination in the move, plaintiff asked Mr. Valverde and Linda Choate, an executive secretary for VMC who also performed limited functions in human resources, whether he was being "singled out" in light of his age.  According to plaintiff, he made that inquiry on other occasions to Ms. Choate and Mr. Valverde after April 2012.

In November 2012, VMC posted a job opening for the position of Merchandising Assistant. Plaintiff was interested in the position and he spoke with Jim Binning, the hiring manager for the position.  Mr. Binning told plaintiff that he believed plaintiff would be well suited for the position.  Consistent with the stated directive on the job posting, plaintiff contacted Ms. Choate, the only person at VMC who performed human resources functions, and

3

told her that he "would like to apply for the job." Ms. Choate acknowledged his interest, but did not set up an interview for plaintiff with Mr. Binning and did not follow up with plaintiff regarding the position.

During this same time frame, VMC completed its move to AWG's facility and Susan Ott, AWG's Vice President of Corporate Human Resources, was putting together a severance package and separation agreement for plaintiff in light of the elimination of the facilities coordinator position. Plaintiff, in the course of a conversation with Ms. Ott about the terms of the severance package, mentioned to Ms. Ott that he was interested in the Merchandising Assistant position. According to plaintiff, Ms. Ott initially told him that she thought it was a "great" idea and would save her from having to complete the separation agreement. When plaintiff met with Ms. Ott later that same day, however, Ms. Ott told him that he was not qualified for the position and would not be considered for it. Ultimately, defendants hired a younger, external candidate for the Merchandising Assistant position. Because he had not secured another position within AWG or VMC, plaintiff's employment was terminated in late November 2012. Plaintiff was fifty-one (51) years old at the time.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.   Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*.,

726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III.   Whether Defendant AWG is Plaintiff's Employer

It is undisputed that plaintiff was employed by defendant VMC.  The parties do dispute whether plaintiff was also employed by AWG.  *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014) (To make out a prima facie case of discrimination, a plaintiff must first prove that the defendant was his or her employer.).  According to plaintiff, AWG is a proper defendant in this lawsuit because AWG and VMC operated as an integrated enterprise (or "single employer") or, in the alternative, that AWG and VMC jointly employed him.  As will be explained, plaintiff has come forward with sufficient evidence to raise genuine factual disputes about whether AWG constituted his employer for purposes of ADEA coverage.  Summary judgment in favor of AWG is denied on this issue.

Under the joint employer test, two entities are considered joint employers if they "share or co-determine those matters governing the essential terms and conditions of employment." *Id*. at 1226 (citation and quotation omitted).  Both entities are employers if they both "exercise significant control over the same employees." *Id*.  "An independent entity with sufficient

5

control over the terms and conditions of employment of a worker formally employed by another is a joint employer within the scope of Title VII." *Id.* According to the Tenth Circuit, the right to terminate an employment relationship is the "most important" factor in determining the amount of control an entity has over the terms and conditions of the employment relationship. *See id*.

The single-employer test, although sometimes confused with the joint employer test, asks "whether two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities." *Id.* at 1226-27. Unlike the joint-employer test, which focuses on the relationship between an employee and its two potential employers, the single-employer test focuses on the relationship between the potential employers themselves. *Id.* at 1227. When applying the single-employer test, courts generally weigh four factors: interrelations of operation; common management; centralized control of labor relations; and common ownership and financial control. *Id.* The most important prong of the single-employer analysis is the centralized control of labor relations. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 n.9 (10th Cir. 2011).

Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that AWG was his employer under either the joint-employer test or the single-employer test. Pertinent to the joint-employer test, plaintiff's evidence reflects that AWG exercised significant control over plaintiff's employment. With respect to the elimination of plaintiff's position, Mr. Nemeth testified that, while he played a part in the elimination decision by asking AWG whether a facilities coordinator was needed at the Kansas Avenue facility (and even perhaps questioning whether that position was needed), AWG's Chief Operating Officer

Mike Rand also played a part in that decision by advising Mr. Nemeth that plaintiff's position was not necessary at the Kansas Avenue facility. Mr. Nemeth's testimony also indicates that Mr. Rand did not provide a definitive answer to Mr. Nemeth right away, but that he looked into the issue further and advised him two weeks later that the position was "covered." Later in his deposition, Mr. Nemeth testified that Mr. Rand had "sent the issue" down to AWG's human resources department, who determined that plaintiff was "not needed" at the Kansas Avenue facility. Indeed, Mr. Nemeth unequivocally testified that AWG and not VMC made the sole analysis as to whether plaintiff's position was unnecessary at the Kansas Avenue facility. Moreover, at the end of plaintiff's employment relationship, Ms. Ott, AWG's Vice President of Corporate Human Resources, handled all of plaintiff's termination paperwork and negotiated plaintiff's separation agreement. Finally, plaintiff's evidence, if credited by a jury, demonstrates that Ms. Ott in some fashion considered and rejected plaintiff's qualifications for the Merchandising Assistant position. A jury, then, could reasonably conclude that AWG exercised significant control over plaintiff's employment and was intimately involved in the decisions to eliminate plaintiff's position; to not hire plaintiff for the Merchandising Assistant position; and to terminate plaintiff's employment.[2]

    With respect to the single-employer test, the evidence is sufficient for a jury to reasonably treat AWG and VMC as an integrated enterprise. Viewed in the light most favorable to plaintiff, the evidence demonstrates that AWG exercised significant control over labor

---

[2] Other evidence, while perhaps less compelling standing alone, buttresses plaintiff's argument that AWG exercised significant control over the terms and conditions of his employment. Plaintiff was required to acknowledge in writing that he attended anti-harassment training provided by AWG and that he understood that any violation of AWG's policies could subject him to termination of employment.

relations at VMC. *See Bristol v. Board of County Comm'rs*, 312 F.3d 1213, 1220 (10th Cir. 2002) (the extent to which one entity can be said to control the labor relations of the other entity's employees is "highly determinative" under the single-employer test). Linda Choate, employed as an executive secretary at VMC, testified that she handled "minor" employee-relations issues for VMC if those issues could be handled in "one meeting" and that VMC did not employ its own human resources personnel. For issues that required attention beyond one sit-down meeting, Ms. Choate testified that AWG handled all human resources functions for VMC, including disciplining employees and managing the termination of employees. Ms. Ott confirmed in her deposition that AWG handles all employee relations issues, including FMLA issues, for VMC employees. While defendants' urge in their summary judgment submissions that AWG was involved in human resources issues for VMC only on "rare" occasions when "specialized knowledge" of employment law was required, that argument simply does not consider the evidence in the light most favorable to plaintiff, as required at this juncture. Similarly, defendants' argument that VMC handles its own performance evaluations and hiring decisions (which, in any event, does not speak to plaintiff's evidence concerning discipline and other employment issues) is an argument that must await trial. Suffice it to say, plaintiff's evidence that the two entities shared HR functions between the two entities, coupled with evidence that the two entities file a consolidated tax return; share IT support; share the same email and phone system; and that VMC employees are required to sign and acknowledge AWG policies and procedures, is sufficient to permit a jury to decide whether the entities should be treated as an integrated enterprise. *See Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999) (evidence that parent and subsidiary constituted a single employer was for jury

where, among other things, companies shared an HR manager, parent was involved in employment-related matters of subsidiary's employees, and entities shared a building, phone system, reception area and office equipment).

## IV.    Discriminatory Discharge Claim

In the pretrial order, plaintiff asserts that defendants eliminated his position and terminated his employment on the basis of his age.  In their motion for summary judgment, defendants, using the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), assert that plaintiff cannot establish a prima facie case of discrimination and cannot show that defendants' articulated reason for eliminating plaintiff's position is pretextual.  Reciting the prima facie elements set forth by the Circuit in *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010), defendants argue that summary judgment is required at this stage of the analysis because plaintiff undisputedly cannot establish that he was replaced by a younger person when he was not replaced at all.  But in the factual context presented here, where plaintiff was not replaced because of a consolidation of the workforce, he need not show that he was replaced by a younger person.  In those circumstances, the final prong of the prima facie case is established by some evidence that the employer intended to discriminate against him in reaching the decision to eliminate plaintiff's position.  *See Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1195 (10th Cir. 2010).  Because defendants

have not otherwise challenged plaintiff's prima facie case,[3] the court proceeds to consider whether plaintiff has offered sufficient evidence to establish pretext.

According to defendants, plaintiff's position was eliminated in the move to 5000 Kansas Avenue because it was duplicative and unnecessary—the existing Director of Corporate Services and the existing Corporate Facilities Coordinator were already responsible for all aspects of the corporate building, equipment and supplies. Defendants have carried their "exceedingly light" burden of production. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The burden of proof, then, shifts back to plaintiff to show that defendants' proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Id*. at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons,

---

[3] In their reply brief, defendants assert for the first time that plaintiff cannot establish the fourth prong of the modified prima facie case utilized in the reduction in force context. The court does not consider arguments raised for the first time in the reply brief. *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013).

10

such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013).  In determining whether the proffered reason is pretextual, the court examines "the facts as they appear *to the person making the decision*, not as they appear to the plaintiff." *Id.* (emphasis in original).  The court does not "ask whether the employer's proffered reasons were wise, fair or correct" but only whether "the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id.*

In an effort to show that defendants' proffered reason is unworthy of belief, plaintiff first highlights alleged inconsistences in the evidence concerning which individuals made or participated in the decision to eliminate plaintiff's position.  According to plaintiff, defendants have routinely "passed the buck" for the decision among VMC's president, AWG's president and AWG's Chief Operating Officer.  But defendants' failure to have one or more members of upper level management take ownership of the elimination decision does not indicate that defendants are lying about the reason for that decision.  In other words, the "salient question is not who terminated the plaintiff but why [he] was terminated." *Paris v. Sanderson Farms, Inc.*, 2013 WL 4483357, at *10 (S.D. Tex. May 2, 2013) (regardless of who made the decision to terminate, fact remains that plaintiff was terminated for failure to return to work—a reason that plaintiff failed to controvert).  Plaintiff has come forward with no evidence that any of the potential decisionmakers—Mr. Nemeth, Mr. Rand and/or Mr. Garland—did not honestly believe that plaintiff's job was unnecessary and redundant after the move to 5000 Kansas Avenue.  As such, testimonial contradictions about who made the elimination decision are insufficient to establish pretext. *See Battle v. United Parcel Serv., Inc*., 2011 WL 8202606, at *13 (W.D. Tex. Dec. 21, 2011) (inconsistencies about who made termination decision are the type of minor

11

inconsistences that are not persuasive in a pretext analysis); *Jones v. Shinseki*, 804 F. Supp. 2d 665, 677-78 (M.D. Tenn. 2011) (contradictory testimony among defendant's agents as to who made the termination decision does not create a triable issue of pretext).

Plaintiff also urges that pretext is established through evidence that plaintiff's job was not eliminated after VMC's temporary move to Corporate Woods despite the fact that he did not perform his regular Facilities Coordinator duties at Corporate Woods.  According to plaintiff, defendants simply found other tasks for plaintiff to perform at Corporate Woods and those tasks were sufficient to keep plaintiff busy for 40 hours each week.  Plaintiff further contends that many of those tasks did not overlap with facilities coordination at 5000 Kansas Avenue such that defendants could have kept him employed at the new facility but defendants instead distributed those tasks among other employees or third-party vendors.

But the relevant inquiry is not whether plaintiff's duties were still performed after his job elimination but whether the responsibilities still constituted a single, distinct position.  *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).  With respect to the tasks that did not overlap with AWG's facilities coordination positions, it is undisputed that those tasks were scattered among a variety of employees, depending on the particular task.  In other words, there is no evidence that the tasks that plaintiff performed at Corporate Woods were subsequently performed by one employee at 5000 Kansas Avenue.  Moreover, defendants, who may have found interim tasks for plaintiff to perform during the temporary relocation to Corporate Woods, did not thereby obligate themselves to create a new position for plaintiff or otherwise continue to accommodate plaintiff after the permanent relocation to 5000 Kansas Avenue.

Plaintiff further contends that he has established pretext with evidence that defendants had a "pattern and practice" of hiring younger, inexperienced employees over older employees with more experience; that plaintiff was nearing his twenty-year anniversary with defendants which would have entitled him to an increased pension; and that plaintiff's position was the only position eliminated despite initial indications that several positions would be eliminated. None of this evidence creates a triable issue of pretext. Plaintiff's "pattern and practice" evidence is based solely on the affidavit of Mr. Binning, who draws that conclusion based solely on the hiring decisions of Anna Mancini, VMC's Vice President of Merchandising, and only with respect to the Merchandising Assistant position. To be clear, then, plaintiff has come forward with no evidence suggesting any company-wide preference for younger workers. And even assuming that Ms. Mancini preferred younger candidates over older candidates, that evidence does not tend to show that plaintiff's job was eliminated based on his age when it is undisputed that Ms. Mancini played no part whatsoever in the elimination decision.

The fact that plaintiff's position was eliminated one year prior to an increase in his pension benefits also fails to create a trial issue of pretext. As an initial matter, there is no evidence in the record that defendants considered or even mentioned plaintiff's pension when making the decision to eliminate plaintiff's position. In any event, by plaintiff's own admission, any increase in plaintiff's pension was tied to plaintiff's years of service rather than his age, which are two "analytically distinct" considerations. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). Thus, even if the evidence demonstrated that defendants eliminated plaintiff's position to avoid a cost increase associated with plaintiff's pension (and there is no such evidence), such evidence would still not require a jury trial on plaintiff's age discrimination

13

claim. *Reeder v. Wasatch County Sch. Dist.*, 359 Fed. Appx. 920, 925 (10th Cir. 2009) (terminating an employee to interfere with pension rights is not, without more, a violation of the ADEA) (citing *Hazen Paper*).[4]

Finally, plaintiff's evidence that his position was the only position eliminated in the move to 5000 Kansas Avenue does not cast doubt on defendants' proffered reason for eliminating his position. While plaintiff makes much of the fact that Mr. Nemeth initially indicated that several positions would be consolidated in the move and yet only plaintiff's position was actually eliminated, he fails to explain the significance of this development, particularly as Mr. Nemeth's statement was made nearly 9 months prior to the move at a time when defendants were still working through the details of the move and its impact on VMC employees. In any event, the fact that, in the end, plaintiff's position was the only one eliminated in the move does not call into question defendants' proffered reason for the decision in the absence of any evidence that any positions other than those related to facilities coordination overlapped after the move.

## V.  Discriminatory Failure-to-Transfer

---

[4] Plaintiff also contends that AWG had been encouraging older employees with pension plans to retire by "misstating pension expectations and purposely painting a forecast of gloom and doom." This argument is based solely on Mr. Binning's affidavit and his statement on the subject is, in turn, based solely on inadmissible hearsay. In that regard, Mr. Binning avers that "other [VMC] employees have indicated to me they believed the company misstated the pension expectations and purposely painted a forecast of gloom and doom in order to encourage older employees to retire." To the extent Mr. Binning avers that defendants encouraged him to retire to save pension costs, that evidence does not in any way suggest that plaintiff's job was eliminated based on plaintiff's age.

Plaintiff contends that defendants refused to hire him for or transfer him to the Merchandising Assistant position in November 2012 on the basis of his age.  To prevail on his claim, plaintiff must first establish that he was a member of a protected class; he applied for and was qualified for the position; despite being qualified he was rejected; and after he was rejected, the position was filled by someone outside the protected class.  *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277-78 (10th Cir. 2005).  Defendants contend that summary judgment is required on this claim because plaintiff can establish no facts from which a jury could reasonably conclude that plaintiff applied for the Merchandising Assistant position.  In the alternative, defendants contend that even if plaintiff is deemed to have applied for the position, he was not qualified for it.  Because a reasonable jury could conclude both that plaintiff applied for the position and that he was qualified for it, plaintiff has sufficiently established a prima facie case and summary judgment is denied on these issues.  Moreover, because evidence exists from which a jury could conclude that defendants' proffered reason for not hiring plaintiff for the Merchandising Assistant position is not credible, a jury trial is required on this claim.

According to defendants, plaintiff cannot establish that he applied for the Merchandising Assistant position.  Defendants' argument is based solely on the fact that plaintiff did not submit a Job Interest Request ("JIR") form with respect to the position.  Defendants assert that internal candidates are "required" to submit a JIR form for any open position in which they are interested and that plaintiff was not considered for the position because he did not submit a JIR form.  By way of background, it is undisputed that internal candidates, unlike external candidates, are not required to fill out a formal job application for an open position.  It is further undisputed that the JIR form does not constitute an "application" but, according to plaintiff's evidence, simply

provides notice to an employee's supervisor that he or she is interested in a new position and alerts human resources that the employee is interested in obtaining an interview for the position. In addition, the evidence viewed in the light most favorable to plaintiff indicates that while defendants "expected" employees to submit a JIR form, the submission of that form was not necessarily required.    In fact, while some job postings clearly indicated that interested employees "should" submit a JIR form to human resources, the job posting for the Merchandising Assistant position did not contain that suggestion.  The posting simply directed interested employees to "contact" human resources without any reference whatsoever to a JIR form.  Consistent with the directive on the job posting, plaintiff contacted Ms. Choate to express his interest in the position.  In their position statement to the EEOC, defendants concede that plaintiff "formally inquired" about the position (and even suggest that he was considered for the position) and it is undisputed that the hiring manager for the position knew that plaintiff was interested in it.  There is no evidence that defendants, at any time, advised plaintiff to submit a JIR form with respect to the position.  In such circumstances, a jury could reasonably conclude that plaintiff has satisfied the "application" prong of his prima facie case.  *See Dirusso v. Aspen Sch. Dist. No. 1*, 123 Fed. Appx. 826,832-33 (10th Cir. Dec. 15, 2004) (law does not require that plaintiff formally apply for job in question, only that employer be on specific notice that plaintiff seeks employment; district court improperly granted summary judgment on "application" prong of prima facie case where it was undisputed that employer knew plaintiff desired the job) (citing Whalen v. Unit Rig, Inc. 974 F.2d 1248, 1251–52 (10th Cir. 1992)).[5]

---

[5] Moreover, to the extent plaintiff did not rigorously pursue his interest in the position, his evidence supports the reasonable conclusion that he did not press the issue because Ms. Ott

Defendants next assert that plaintiff, even if he applied for the Merchandising Assistant position, was not qualified for it.  Defendants emphasize that plaintiff, in his deposition, had no working knowledge of various Microsoft Office programs that, according to defendants, were essential to performing the Merchandising Assistant position.  Viewing the evidence in the light most favorable to plaintiff, a jury could reasonably conclude that he was qualified for the position.  Mr. Binning, the hiring manager for the position, avers that he encouraged plaintiff to apply for the position and that, based on his understanding of plaintiff's experience and qualifications, plaintiff would have been a "good fit" for the position.  Mr. Binning further avers that he could have easily trained plaintiff on any job duties or tasks with which plaintiff needed assistance and that plaintiff had sufficient computer skills to perform the position.  According to Mr. Binning, the position did not require the use of any "complicated" computer programs and all of the computer-based duties for the position required only entry-level skills that a "smart, motivated employee" could quickly learn on the job.   Without question, plaintiff has satisfied this aspect of his prima facie case.  *See Doyle v. Nordam Group, Inc*., 492 Fed. Appx. 846, 851-52 (10th Cir. 2012) (for purposes of prima facie case, plaintiff need only show that he or she is minimally qualified for position).[6]

---

advised him that he would not be considered for it.  *See Dirusso*, 123 Fed. Appx. at 833 (plaintiff satisfied application prong despite resignation where it was undisputed that defendant was not going to hire her).

[6] If defendants had asserted that they declined to hire plaintiff for the position based on his qualifications, then defendant's evidence concerning plaintiff's relative lack of qualifications would be relevant at the pretext stage.  *See Doyle*, 492 Fed. Appx. at 852.  But because defendants do not argue that the employment decision was based on plaintiff's qualifications (but that it was based solely on plaintiff's failure to apply), plaintiff's qualifications are only relevant at the first stage of the McDonnell Douglas analysis.  *See id.* at 851.

Because plaintiff has established a prima facie case of discrimination, the burden shifts to defendants to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013).   According to defendants, plaintiff was not hired for the Merchandising Assistant position because plaintiff did not apply for the position or, at the very least, management did not believe that plaintiff was seeking the position. But plaintiff has come forward with ample evidence which, if credited by a jury, casts doubt on defendants' proffered reason.   As explained in connection with plaintiff's prima facie case, it is all but undisputed by defendants that plaintiff clearly indicated his interest in the Merchandising Assistant position, that he expressed that interest directly to the relevant decisionmakers and that defendants deemed plaintiff to have "formally inquired" about the position.   Moreover, in defendants' position statement to the EEOC, defendants stated that the successful candidate was selected "over" plaintiff and others based on the successful candidate's qualifications—which obviously suggests that plaintiff was, in fact, considered for the position but was rejected based on some assessment of his qualifications.   This evidence—evidence that the decisionmakers knew about plaintiff's interest in the position and considered plaintiff for the position—directly contradicts defendants' present contention that plaintiff was not selected for the Merchandising Assistant position because plaintiff did not apply for it and/or management did not realize that plaintiff was interested in it.  *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002 (10th Cir. 2011) (changing explanations can show that the employer is attempting to mask an illegitimate motive).   Viewed in the light most favorable to plaintiff, then, a reasonable jury could easily conclude that defendants' proffered reason for failing to transfer plaintiff to the Merchandising Assistant position is not worthy of belief.   Summary judgment on this claim is denied.   *See*

*Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1282 (10th Cir. 2010) (after showing that defendant's reason for employment decision is pretextual, plaintiff is under no obligation to provide additional evidence of age discrimination).

## VI.   Retaliation Claim

The ADEA makes it unlawful for an employer to retaliate against an employee because he or she has opposed any practice made an unlawful employment practice by those statutes. 29 U.S.C. § 623(d).   Plaintiff asserts in the pretrial order that defendants terminated his employment and failed to transfer him to the Merchandising Assistant position in retaliation for his inquiry to Ms. Choate and Mr. Valverde about whether he was being "singled out" based on his age for employment termination in connection with the move to the Kansas Avenue facility. The court assesses plaintiff's retaliation claim under the *McDonnell Douglas* framework. *Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 638 (10th Cir. 2012).   To state a prima facie case for retaliation, plaintiff must show (1) he "engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Id*. (quoting *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1202 (10th Cir. 2008)).   If plaintiff presents a prima facie case of retaliation, then defendants must respond with a legitimate, nonretaliatory reason for the challenged action.   *Debord v. Mercy Health Sys. of Kansas, Inc*., 737 F.3d 642, 655 (10th Cir. 2013).   Plaintiff, then, must show that defendants' stated reason is pretextual.  *Id*.

In their motion for summary judgment, defendants contends that summary judgment is warranted on plaintiff's retaliation claim because the evidence viewed in the light most favorable to plaintiff demonstrates that he did not engage in protected activity and that no causal connection exists between any alleged protected activity and the termination of plaintiff's employment or the failure to select plaintiff for the Merchandising Assistant position. Defendants further argue that the record evidence is insufficient to permit a reasonable jury to conclude that defendants' proffered reasons for these adverse actions are pretextual.  As explained below, genuine issues of fact exist with respect to plaintiff's claim that he was not selected for the Merchandising Assistant position in retaliation for his expressed concerns about age discrimination.  A jury trial is required on this claim.  But no reasonable jury could conclude on this factual record that plaintiff's position was eliminated in retaliation for raising concerns about age discrimination.  Summary judgment, then, is granted on that claim.

In support of its argument that plaintiff did not engage in protected activity, defendants contend that plaintiff, on this point, "suddenly and without explanation" changed his deposition testimony after the lunch break (and, presumably, a discussion with counsel) and that plaintiff has improperly attempted to create a factual issue where one previously did not exist.  This argument is rejected.  Although plaintiff testified prior to the break that he could not recall "exactly" what he had said to Ms. Choate and Mr. Valverde, he testified (again, prior to the break) that he asked Ms. Choate and Mr. Valverde "Why am I being singled out?  Is it because of my age or—I mean, what—why am I singled out to lose my job and nobody else is."  After a full reading of the pertinent portions of plaintiff's deposition testimony, it is clear to the court that plaintiff has not "created" factual issues through a change in deposition testimony.  Thus,

20

plaintiff's testimony that he asked Ms. Choate and Mr. Valverde whether he was being singled out based on his age is sufficient for a jury reasonably to conclude that he engaged in protected opposition to discrimination for purposes of the ADEA's anti-retaliation provision.

Defendants next assert that plaintiff cannot establish the "causal connection" prong of his prima facie case because he has no evidence that any of the decisionmakers had knowledge of his protected activity. *See Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1203 (10th Cir. 2008) (to satisfy causal connection element, plaintiff must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity). To begin, plaintiff's evidence reflects that he shared his concern about age discrimination with Ms. Choate and Mr. Valverde. There is no evidence suggesting that he shared that concern with any other VMC or AWG employees. Moreover, there is no evidence that Ms. Choate or Mr. Valverde shared that information with any other VMC or AWG employees. Thus, to establish a causal connection at this stage, plaintiff must have some evidence from which a jury could conclude that Ms. Choate and/or Mr. Valverde was involved in the decision to eliminate his position or the decision not to select him for the Merchandising Assistant position.

With respect to the decision to eliminate plaintiff's position, plaintiff emphasizes that Mr. Valverde notified plaintiff about the elimination decision; that Ms. Choate instructed Mr. Valverde to advise plaintiff that his position would be eliminated; and that Ms. Choate sat in on the meeting during which plaintiff was informed that his position would be eliminated. But these facts demonstrate only that Ms. Choate and Mr. Valverde delivered to plaintiff the message that his job was scheduled for elimination. There is no evidence from which a jury

could reasonably conclude that Ms. Choate or Mr. Valverde participated in any way in the substantive decision to eliminate plaintiff's position.  Summary judgment, then, is granted on plaintiff's claim that defendants eliminated his position in retaliation for engaged in protected activity." *See id*. at 1203-04 (summary judgment appropriate on retaliation claim where plaintiff had no facts showing that anyone involved in termination decision had knowledge of protected activity; uncontested evidence established that HR manager received complaint, did not share it with anyone else, and did not participate in the termination decision).[7]

There is evidence, however, that Ms. Choate may have been involved in defendants' failure to transfer plaintiff to the Merchandising Assistant position.  Viewing the facts in the light most favorable to plaintiff, the record reflects that Ms. Choate knew that plaintiff was interested in the Merchandising Assistant position and that it was her responsibility to arrange interviews for the position—interviews that, in the case of internal candidates, would have been conducted solely by the hiring manager.  Because plaintiff complied with the posting by "contacting" human resources, a reasonable jury could conclude that defendants' practice was such that Ms. Choate, at that point, would set up an interview for plaintiff with Mr. Binning. For whatever reason, Ms. Choate did not set up an interview or in any way pursue plaintiff's expressed interest in the position.  Factual disputes exist, then, with respect to Ms. Choate's role

---

[7] Summary judgment on this claim is appropriate for two other reasons as well.  First, even assuming Ms. Choate or Mr. Valverde participated in the decision to eliminate plaintiff's position, the parties' arguments concerning pretext mirror those set forth in connection with plaintiff's discriminatory discharge claim.  For the same reasons set forth in connection with that claim, then, plaintiff cannot establish pretext with respect to this retaliation claim.  Second, because it is undisputed that plaintiff first raised his age discrimination concern only after he was advised about the elimination of his position, no reasonable jury could conclude that the decision was based on his concerns.

in the decisionmaking process as it relates to the Merchandising Assistant position and the "causal connection" issue must be resolved by a jury.

Defendants' proffered reason for its failure to hire plaintiff for the Merchandising Assistant position, and both parties' arguments concerning pretext, are the same as set forth above in connection with plaintiff's discrimination claim. Thus, for the reasons set forth above, plaintiff has come forward with evidence from which a jury could reasonably conclude that defendants' proffered reason is not worthy of belief. Summary judgment on this claim is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment (doc. 47) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 3rd day of February, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

23